338

SANFELIZ v. BANK OF NOVA SCOTIA
(two cases).
Nos. 2854, 2855.

Circuit Court of Appeals, First Circuit.
Dec. 19, 1934.

Leopoldo Feliu, of San Juan, Puerto Rico (William D. Cunningham, of New York City, of counsel), for appellant.

Henri Brown, of San Juan, Puerto Rico, for appellee.

Before BINGHAM and WILSON, Circuit Judges and LETTS, District Judge.

BINGHAM, Circuit Judge.

These are appeals by the plaintiff from judgments of the federal District Court for Puerto Rico of May 24, 1932, in actions at law brought by her against the defendant. In the first action (No. 2854) judgment was entered for the defendant, and in the second (No. 2855) the judgment was in favor of the plaintiff for $238.04.

These actions were originally brought in the District Court for San Juan, and, on the first day on which the defendant was required to plead, it presented a petition and bond in each action for its removal to the federal District Court, and orders of removal were made and the cases transferred. Thereafter the plaintiff filed motions to remand, which were denied.

The ground of objection here relied on as to the removal of the causes and the denial of the motions to remand is that both parties are aliens, the plaintiff being a citizen of Spain and domiciled there, and the defendant a corporation organized and existing under the laws of the Dominion of Canada, having its principal office in the city of Halifax, Dominion of Canada. The removal was sought and obtained in each action on the ground of diversity of citizenship and that the matter in controversy, exclusive of interest and costs, exceeded $3,000. And, inasmuch as section 41, title 28 USCA, conferring jurisdiction on the District Courts of the United States, has been held not to give jurisdiction over a controversy between aliens—that at least one of the parties must be a citizen of the United States [Doidge v. Cunard S. S. Co. (C. C. A.) 19 F.(2d) 500, 502; Jackson v. Twentyman, 2 Pet. 136, 7 L. Ed. 374]—it is contended that the same rule must be applied to section 863, title 48 USCA, conferring jurisdiction on the federal District Court for Puerto Rico. But this plainly is not so. The courts of the United States are those Congress is authorized to establish under article 3, § 1, of the Constitution of the United States, and by section 2 of that article, the judicial power which Congress is authorized to confer on them is "not extended to private suits, in which an alien is a party, unless a citizen be the adverse party" (cases supra); whereas the federal District Court for Puerto Rico is not a court of the United States, but a legislative court created under article 4, § 3, cl. 2 of the Constitution (O'Donoghue v. United States, 289 U. S. 516, 535, 537, 53 S. Ct. 740, 77 L. Ed. 1356), and the judicial power which Congress may confer upon it is not thus limited.

On March 2, 1901, Congress, in conferring jurisdiction on the District Court for Puerto Rico, provided (31 Stat. 953, c. 812, § 3) as follows:

"Sec. 3. That the jurisdiction of the district court of the United States for Porto Rico in civil cases shall, in addition to that conferred by the Act of April twelfth, nineteen hundred, extend to and embrace controversies where the parties, or either of them, are citizens of the United States, or citizens or subjects of a foreign State or States, wherein the matter in dispute exceeds, exclusive of interest or costs, the sum or value of one thousand dollars."

And the Supreme Court, in May, 1906, construing this provision of law in Ortega v. Lara, 202 U. S. 339, 26 S. Ct. 707, 708, 50 L. Ed. 1055—a case where both plaintiff and defendant were subjects of the King of Spain—held that "the jurisdiction of the district court, when the parties on both sides were the subjects of the King of Spain, has several times been sustained by this court, and we do not feel required in this case to make any other ruling."

The present statute (section 863, title 48, USCA), relating to the jurisdiction of the federal District Court for Puerto Rico, provides:

"Said district court shall have jurisdiction of all controversies where all of the parties on either side of the controversy are citizens or subjects of a foreign State or States, or citizens of a State, Territory, or District of the United States not domiciled in Porto Rico, wherein the matter in dispute exceeds, exclusive of interest or cost, the sum or value of $3,000."

In construing this statute the courts have held that the phrase "not domiciled in Porto Rico" qualifies the words "citizens or subjects of a foreign State or States" as well as the words "citizens of a State, Territory, or District of the United States." Porto Rico Ry., Light & Power Co. v. Mor, 253 U. S. 345, 40 S. Ct. 516, 64 L. Ed. 944; Id. (C. C. A.) 266 F. 516; Vere v. Bianchi (C. C. A.) 266 F. 367; Diez v. Green (C. C. A.) 266 F. 890. It is true that this act placed limitations upon the jurisdiction of the District Court for Puerto Rico not contained in the prior one: (1) It increased the requisite amount from one thousand to three thousand dollars, and (2) provided that the parties, on one side of the controversy at least, must be either aliens not domiciled in Puerto Rico, or citizens of a state, territory, or district of the United States not domiciled in Puerto Rico. It did not restrict its jurisdiction over a controversy between aliens, if the alien representing one side of the controversy was not domiciled in Puerto Rico.

For the reasons above given, the removals were proper and the District Court did not err in denying the motions to remand.

In the District Court the cases were tried before the court, a jury having been waived in writing. It does not appear that either party during the trial and before final submission of the cases presented requests for special findings or requests for rulings or, at the conclusion of the evidence, moved for judgment in her or its favor. The court, however, filed special findings of fact and rulings of law, and at the same time entered the judgments appealed from. After learning that the findings had been made and judgments entered, the plaintiff sought to challenge the sufficiency of the evidence to support the findings of fact and to except to them and the conclusions of law.

In jury waived cases, especially in localities where counsel are not likely to be informed as to what they must do to save their client's rights, it is customary for the court to inform them of what they must do and to afford them every reasonable opportunity to that end; for otherwise, by waiving trial by jury and submitting the matter to the court under the statutes regulating such procedure, their rights are more likely than not to be sacrificed and the trial result in a snare and delusion. If, at the close of the evidence and arguments, the case is not finally submitted but only for the court to make a tentative report of his findings of fact and rulings of law and counsel are afforded an opportunity to examine the same and save their exceptions, every reasonable opportunity to preserve the rights of the parties would be had. This having been done, the submission could be made final, and then the findings, rulings, and exceptions would be had in the course of the trial and before final submission of the case and, on being included in a bill of exceptions, as in the case of a trial by jury, would properly save the questions for review.

While what has been said cannot aid the plaintiff in these cases, it may in the future be of aid and save to litigants their right to a review of meritorious questions which they may desire to have re-examined.

Section 773, title 28 USCA (Act May 29, 1930, 46 Stat. 486, c. 357), provides:

"§ 773. Issues of fact in civil cases in any district court may be tried and determined by the court, without the intervention of a jury, whenever the parties, or their attorneys of record, agree to waive a jury by a stipulation in writing filed with the clerk

340

or by an oral stipulation made in open court and entered in the record. The finding of the court upon the facts, which may be either general or special, shall have the same effect as the verdict of a jury."

Section 875, title 28 USCA, provides:

"§ 875. When an issue of fact in any civil cause in a district court is tried and determined by the court without the intervention of a jury, according to section 773 of this title, the rulings of the court in the progress of the trial of the cause, if excepted to at the time, and duly presented by a bill of exceptions, may be reviewed upon a writ of error or upon appeal; and when the finding is special the review may extend to the determination of the sufficiency of the facts found to support the judgment."

The courts, in construing these provisions of law, have held that exceptions to special findings of fact and rulings of law must be taken at the time and during the course of the trial, and that exceptions taken to such findings and rulings, after final submission of the case, are not seasonably taken and, although embodied in a bill of exceptions, will not be reviewed by an appellate court; that where special findings of ultimate facts are made and no exceptions are taken during the course of the trial and before final submission, the only question open for review in the appellate court is whether, as a matter of law, the facts found support the judgment; and that, this being a matter of record, no exception is necessary for its preservation. United States v. Smith (C. C. A.) 39 F.(2d) 851; Harvey Co. v. Malley (C. C. A.) 60 F.(2d) 97; Id., 288 U. S. 415, 53 S. Ct. 426, 77 L. Ed. 866.

No exceptions in these cases having been saved by the plaintiff to the special findings and rulings of law before final submission, and the exceptions taken after the entry of judgment, so far as they are here relied upon, being too late, the only question open for review in either case, under the assignments of error, is whether the facts found support the judgment, for no rulings on the pleadings and the sufficiency of the complaints are here presented; which latter questions would be subject to review as in any other case, independently of statute. Harvey Co. v. Malley, 288 U. S. 415, 419, 53 S. Ct. 426, 77 L. Ed. 866.

The special findings of fact are:—That the plaintiff was the owner of certain premises in the city of San Juan, Puerto Rico, leased by her predecessor in title to the defendant; that the lease was for a period of six years with the privilege, which was exercised, of renewal for the further term of five years; that the term commenced on October 22, 1918, and terminated on October 22, 1929; that the defendant occupied the premises for banking purposes for a period of about two years, after which it moved to other quarters; that it then sublet the premises and one of its sublessees was in the actual possession, through its tenants, at the expiration of the lease; that, on the expiration of the lease, the plaintiff refused to accept possession of the premises, they being occupied by tenants on the second floor of the building; that those tenants did not vacate that floor until December 13, 1929; and that the loss of rental or use and occupation of the premises from December 22, 1929, to August 31, 1930, was due to the plaintiff's failure and refusal to take possession of the leased building and make the necessary repairs. It appears in the fifth allegation of the complaint in action No. 2854 (for loss of the use and occupation of the premises) and in the defendant's answer thereto that the plaintiff did not take possession of the building until June 26, 1930, when she entered into possession under a written stipulation providing that she did so without prejudice to the respective rights of the parties. And it was alleged in the fifth paragraph of both bills of complaint that "defendant did not deliver the building * * * with the repairs which under the contract it had obligated itself to make," and the defendant in both of its answers admitted this allegation to be true.

No damages were claimed in the plaintiff's complaint in action No. 2854, for loss of the beneficial use and occupation of the property from October 22, 1929, to December 22, 1929, for the reason that during that period the defendant was in possession of the property, having held over after the time fixed for the expiration of the lease, and the plaintiff then had pending in the District Court of San Juan a suit for rent covering that period (see complaint par. VIII), in which, as appears from the defendant's brief, a judgment was later entered against the defendant and affirmed by the Supreme Court of Puerto Rico in an opinion filed June 14, 1934.

The court, as to action No. 2855, the suit for repairs, found that the lease contained the following provision, "All repairs which may have to be made in the property during the term of the contract, will be made by the lessee, except those which by natural wear and tear or acts of God may affect the securi-

ty of the building"; that the plaintiff and defendant construed this clause to mean that the building should be delivered at the end of the lease in the same condition in which it was received, excepting changes resulting from natural wear and tear or acts of God affecting the safety of the building; that before the expiration of the lease plaintiff notified the defendant that the premises were out of repair, claiming that none of the needed repairs were of such a nature as to affect the safety of the building and were, therefore, under the lease, properly chargeable to the lessee; that the defendant, the lessee, refused to make the repairs requested by the plaintiff, claiming that they called for more than was necessary to restore the building to the condition existing at the date of the execution of the lease; that the plaintiff commenced making the repairs July 1, 1930, and the work was completed on August 31, 1930; that some of the repairs made by the plaintiff were not of a character that it was the duty of the defendant to make; that the cost of the repairs claimed by the plaintiff was $3,087.18 (outside of and not including $288.16 for repairs made to a balcony in 1925 and necessary to the security of the building, not here in question).

The court found that the "reasonable and fair cost of all work and repairs, exclusive of exterior painting [the reasonable cost of which was $687.25], necessary to place the leased building in the same condition in which it was received by the defendant at the beginning of the lease" was $238.04, although the plaintiff had alleged in her complaint in No. 2855 that the repair work necessary to restore the building to the condition in which it was received by the defendant was $3,087.18 (exclusive of $288.16 for repairs to the balcony above referred to), and the defendant had alleged and thereby admitted in its answer "that the repairs which were necessary on said building in accordance with the lease contract did not exceed in value the sum of $1,192.84 and that the cost detailed by plaintiff in his complaint in excess of said sum of $1,192.84 did not represent repairs in accordance with the stipulations contained in the lease contract," and that it "has always been willing and is now willing to pay the plaintiff" "the sum of $1,192.84."

The court further found that the plaintiff required of the defendant work and repairs in excess of what were necessary to place the leased premises in the condition they were at the time of the execution of the lease and that the work and repairs neces-

sary to restore the leased building to such condition "could have been done and completed within three weeks"; and that the "plaintiff, in the exercise of due diligence could have secured the eviction of any sub-tenant or subtenants within a period of six weeks."

Although the District Court found in action No. 2854—the suit for loss of the beneficial use and occupation of the premises from December 22, 1929, to August 31, 1930, after the premises had been vacated by the tenants and when the repairs had to be made which the defendant had failed to make during the existence of the lease—that it would have taken three weeks to do the work necessary to restore the building, it nevertheless entered judgment for the defendant, instead of for the plaintiff for the loss she sustained from being deprived of the beneficial use of her property by reason of the defendant's breach of its contract in failing to make the repairs during the existence of the lease (see complaint par V). It is evident from the facts found, that the plaintiff lost the beneficial use and occupation of the premises for three weeks, at least, the time it would take to make the repairs necessary to restore the building to the condition in which it was, and that the judgment in No. 2854 is not one warranted by the facts found and must be vacated and the case remanded to the District Court for a new trial.

In No. 2855, the suit for repairs, it appears from what has been said that the defendant, in its answer, admitted that the repairs necessary to restore the building to the condition it was at the time the defendant took it was $1,192.84 and that it "has always been willing and is now willing to pay the plaintiff" that sum, and that the court found that the cost of such repairs was $238.04. These facts are plainly inconsistent with one another and the question is whether, in view of this, the judgment for the plaintiff for only $238.04 should stand. We think it cannot, and that in case No. 2855 the judgment must be vacated and the case remanded to the District Court for a new trial.

While, owing to the state of the record, we are precluded from determining whether the facts found are warranted by the evidence or the rulings of law made were correct, we do not intend to have it understood that we think these questions and the question as to the construction of the provision of the lease relating to the repairs referred to in the findings, were rightly or wrongly decided by the District Court.

In No. 2854, the judgment of the District Court for Puerto Rico is vacated and the case is remanded to that court for a new trial, with costs to the plaintiff-appellant.

In No. 2955, the judgment of the District Court for Puerto Rico is vacated and the case is remanded to that court for a new trial, with costs to the plaintiff-appellant.